Good afternoon and welcome to the Nakamura Courthouse here in Seattle. It's a pleasure to be here today. The case set for our argument at this time is the case of Keo Ratha et al. v. Rubicon Resources, LLC. So if the parties are ready to begin, counsel, you may come forward. Thank you, Your Honor. My name is Agnieszka Frischman, and may it please the Court, I represent the plaintiffs. I'd like to reserve five minutes of my time, if I may, for rebuttal. When this case was first before the Ninth Circuit, the first panel, Ratha I, that panel determined that the Congress intentionally declined to extend civil liability over persons who attempt but fail to benefit from forced labor. Seven months later, which is a nanosecond in Congressional time, the Congress unanimously in a bipartisan amendment entitled Clarifying a Technical Update to the Civil Remedy inserted the exact words that the first panel in Ratha I said were missing from the Civil Remedy Clause and passed as part of the Abolished Trafficking Restoration Act, an amendment that clarified what Congress always intended that provision to mean, that the Trafficking Victim Protection Act extends civil liability over persons who attempt but fail to benefit from forced labor. Yes, Judge Beatty. Yes, so I take it your point is that the statutory language before the amendment was ambiguous, and so we can apply the limited exception to Landgraf and conclude that this is just clarifying, that this isn't a change, a substantive change in the law. That's correct, Your Honor. So the first panel, Ratha I, did not identify any unidentified terms, did not apply dictionary definitions, and really addressed this issue briefly without finding any ambiguity in the statute based on the statute's plain text. And of course that panel decision was unanimous. So first of all, is that not now law of the case that the statute was unambiguous? And second, if it's not, how does that suggest that there was confusion among the courts, the courts were struggling to define or apply Section 1595? So our position is that the panel read the statute very differently from the way, of course, that we the plaintiffs had read it. We had relied on Section 1589B, to which there's no dispute even in Ratha I that attempt liability attaches to 1589B. But do you see a difference between criminal liability for an attempted criminal offense and civil liability based on attempted beneficiary status? Sorry, something's happening here. 1589B has two parts. It has Part A that criminalizes forced labor by abuse of process, by force, threats of force. And then it has Part B that criminalizes anyone who benefits from the means described in Part A. And that attempt liability attaches to both A and to B via Section 1594. And both A and B are subject to the exact same penalty that's laid out in Section D of 1589B. So those provisions are parallel. They're exactly the same in terms of their structure. Both of them are incorporated into 1595, which provides co-expensive civil liability over the criminal predicate act. But that doesn't answer my question. I think I'm getting at something a little different. Correct me if I'm wrong, but I recall that there is a provision within this statutory section that criminalizes attempt. 1594. Yeah, 1594. Thank you. So Congress was very clear that there's criminal liability for attempting to violate these statutes. And 1589 includes attempt liability. Right. So I still see a difference between criminal attempt liability and what appears to me to be a new theory, which Congress can enact if it sees fit, of civil liability based on an attempted benefit. Do you see a difference between those two theories of criminal and civil liability? I think that is where the conflict in the circuits come in. Congress intended civil liability to be co-extensive with the criminal liability. And that is what Roe versus Howard found in a unanimous opinion by the Fourth Circuit. Roe was addressing extraterritorial jurisdiction.  So I've read Roe many times, including rereading it this morning. And I didn't find a single word in which it interpreted civil liability in 1595. It was all about extraterritorial jurisdiction. And the hitch there was the RJR case. So they had to find a way to distinguish when Congress had found there was extraterritorial jurisdiction and a rego for criminal acts but not for civil acts. And so this was their hook. It included the civil provision was co-extensive with the criminal provisions. What's interesting about Roe is that 1595 is not included in 1596. So the statute that explicitly made these crimes extraterritorial doesn't include 1595. But I don't see – can you point me to some language where Roe says, here's how you read 1595, and it includes an attempted benefit? So Roe doesn't deal with attempt. But what it does hold explicitly in the text, because that's what the basis for the entire holding is, is that the civil remedy is co-extensive with the criminal predicates. And that is consistent with the legislative history of the TBPRI. Where in the committee report, Congress said what we're intending to do when we pass 1595, the civil liability provision, is we intend to make it co-extensive with the criminal predicates so that we have civil liability for every violation of the criminal code. So that's what Roe held. That's what the legislative history says. And if you look at Justice Souter's opinion for the First Circuit in Riccio, he holds that civil liability also applies to 1595. And both Riccio and Roe dealt with perpetrators, unquestionably people who perpetrated criminal offenses against the victim. There was not an issue – certainly in Roe, there was not an issue of attempt liability or beneficiary liability. In Riccio, the court said that the defendants at issue directly benefited by renting out their hotel room where the victim was being held captive and sexually assaulted. So they had direct beneficiary liability. But I didn't see anything in Riccio that talked about saying that means you can have this form of civil liability for attempting to benefit. So in Riccio, Justice Souter said the major point of our disagreement with the district court is that the district court found that the perpetrator had to succeed in the criminal act. Part of the criminal act had to succeed in essentially pimping out the victim, selling her to third parties for sexual activity. But they had committed crimes other than that, right? Like holding her captive by sexually assaulting her in the hotel room. Well, actually, that's why I think Justice Souter's opinion does deal with attempt. Because he said – or he described the variety of claims that could be brought under the facts that were alleged in that case. He says one of those is claim six. And that is 1594 and 1595. So that brings me back to my first question. Well, I mean, I understand where you're going. But Riccio talks about you can have civil liability for attempting to commit a crime. And I don't differ with you. I don't think Rother 1 differs with you. That if you attempted to commit one of these offenses, there is civil liability. But in de Tullio, we said that the civil liability, the civil remedy, is based in tort. It sounds in tort. And that was important because that's how we concluded that punitive damages were available. We also did an analysis comparing it to a constitutional violation in Section 1983 claim. But neither of those forms of liability that I can think of include an attempt. Like I can't think of a single instance in which you could be liable for an attempted tort. And the cryptic said you can't be liable for an attempted constitutional violation. So it seems like this is a new form of civil liability, which would be a substantive change. So I just want to head back to Riccio for a second. I wanted to make clear that in Riccio, Mr. McLean, who was kind of the primary victimizer, hadn't succeeded in forced labor. Because the victim escaped before there was any act of forced commercial sex. So there was no benefit under Section 1599 because there had been no act of forced labor at the time that the victim escaped. So what Justice Souter was talking about was attempted benefit. Right, was attempted crime. He was talking about a criminal case. What do you ask? Are you asking for Routh of Lynn to be overruled then? No, we're asking the court to find that the Abolished Trafficking Restoration Act is a clarifying amendment that clarifies what Congress originally intended, which was that there was attempt and conspiracy liability included in the civil remedy. So what is the standard of proof, if you will, that you have to meet? For this to be retroactive? The courts have looked at three things. They've looked at timing, they've looked at the text, and they've looked at the context. And for timing, courts have found that when something follows quick upon the discovery of a dispute or an ambiguity, that it's more likely to be clarifying. These are factors we've identified, but do they roll up into some ultimate determination that what? That Congress was clear, or do you not have to show that? Well, here Congress was clear. They used the words clarifying and technical, which carries with it a settled meaning. Do you agree that you have to show that Congress was clear? That would be how Landgraf would require this. You have to either have an express command or you have to have a clear indication that this would be retroactive. Do you agree that you have to meet that standard? I think the clarification doctrine doesn't have to meet the Landgraf standard, but I think here in this case we do. I think Congress's choice to label the amendment clarifying and technical is a clear statement of congressional intent, and it relies on the settled meaning that this Court and every other circuit except the Federal Circuit has used to determine whether amendments are clarifying. Every circuit has recognized that when you say something is clarifying, that that's what Congress's intent is, and that this Court should give effect to congressional intent. It's a little more ambiguous than that, this clarifying update, but I guess it raises the question of whether this clarifying amendment exception to Landgraf is a valid exception, because if it suggests that you don't have to prove that Congress clearly intended retroactivity and that all you have to prove is that the amendment was clarifying, it seems like that's a bit of an end run around Landgraf. Well, I know that the Washington Legal Foundation submitted an amicus brief making that argument. Every circuit, though, recognizes the clarification doctrine. I think it's part of the conversation between the courts and the Congress that when a dispute arises, Congress can correct a scrivener's error or can correct a misinterpretation and make clear what it always intended, and that's what the clarification doctrine has meant for, you know, 100 years. Well, that isn't really in contrast to the diction with Landgraf, because Part 2 of Landgraf allows a court to conclude that an amendment was retroactive if Congress made its intent clear. So it's really, it seems to me, an application of that doctrine, one of the indicia being that something is labeled clarifying and technical rather than brand new. So I don't think that what you're arguing is necessarily inconsistent with recognizing that Landgraf may apply. That's correct, Your Honor. In fact, Landgraf has a paragraph that says there are solitary and benign purposes for legislation that applies retroactively, and one of them is to correct mistakes. I have a practical question for you. Here, you were on a 60B6, correct? Correct. And the district court denied summary judgment on three bases. One, there were no facts demonstrating that Rubicon knowingly participated in a human trafficking venture. Two, there is no evidence that Rubicon knew or should have known about the alleged human trafficking. And three, there is no evidence that Rubicon benefited from the alleged human trafficking. It seems to me that the ATRA or A-T-R-A only implicates the third basis. Am I correct? That's correct, Your Honor. So can you explain how we can't just affirm? I'm just trying to see how you – if we said it only affects the first three, but the other two are valid bases for summary judgment, why are we doing this? So we contend that the other two bases are errors of law. In terms of the knowledge decision that he made, he misapplied the summary judgment standard, drew the inferences against plaintiff, and actually was inconsistent with the decision in RATHA 1. In RATHA 1, the court bifurcated the knowledge and said before February 2020, there were general reports which are insufficient. But the RATHA 1 panel found that as of February 2012, that Rubicon was undisputably aware of the whistleblower reports. I'm sort of wondering if we find that ATRA is retroactive, but nonetheless does not affect the first or second basis for the district court's order granting summary judgment, don't we have to affirm the denial of the Rule 60B-6? I don't think so, Your Honor. I think because the district court incorporated those two rulings as alternative bases, this court can reach them. And as I was saying, that they are both errors of law. So the knowledge, we think he incorrectly applied RATHA 1 and failed to appreciate that we had multiple facts in the record about knowledge that post-date February 2012. And as the opinion in RATHA 1 concluded, Rubicon was undisputably aware of the forced labor at that point due to whistleblower reports, due to the United Nations meeting about that fact. Counsel, what's our standard of review on the summary judgment issues that would be embedded in the Rule 60B order? I think it's de novo. How is, right, there might be a legal error that could constitute an abuse of discretion. But the summary judgment in the prior proceeding, right, in the original proceeding, was untouched, right? It's because we reached another ground. You might not have had your opportunity to appeal it. But is it de novo because why? Because it's legal errors, and the district court incorporated those legal errors in the 60B ruling because he could have ruled on other things and not incorporated those, and then that would be a different procedural posture. But because he expressly incorporated those erroneous rulings in the 60B order, I believe they're up and that you can reach them. So does it become a, does that mean you can use Rule 60B as a way to reconsider the other basis that the district court reached, the first panel did not, but now we're going to make a retroactivity argument, and so now everything's fair game again. You get a second appeal of those issues. Well, but the district court did incorporate those rulings. If the district court hadn't done that, then we would be, then, you know, maybe that would be what you said. But the court did incorporate those rulings. I think they're fairly presented. It is de novo review, and we contend that they are both errors of law. And if I could just go back to the— But before you do that, did the prior court that reviewed this weigh in on whether the district court was correct on the participation in a venture, or known or should have known? So the court did not weigh in on the participation. The Court of Appeals in Ratha 1 did not reach the participation in the venture, and our position is that the court below, the district court, has picked an idiosyncratic definition that is different from every other court in the United States that has considered that issue, and it's a clear error. So I guess—so here, not getting the second bite at the apple, that was never— it's an interesting procedural context that we're looking at this, because often that would have had the opportunity to do that, but that never got litigated because the prior panel just stopped after the knowing basis. Is that correct? That's correct. And as I said earlier, the prior panel did point out that Rubicon actually undisputably was aware as of February 2012. In your view, I guess, what's your best case in support of your argument that ACTRA is a clarification of the law that should be applied retroactively? I think it's really almost all of the cases, right? There's U.S. v. Contreras. There's Beverly Hospital v. Belshi. There's Brown v. Thompson. There's Calejas. There's Bedoni. There are a wealth of cases that have considered when Congress acts to clarify a statute where there's a mistake in the wording or they feel the court has got it wrong, and this is a routine and traditional exercise. Well, which is it, I guess, because you've mentioned that it might be a mistake. It might be—I'm sorry, I'm over here. It might be a mistake, Scrivener's error. It might be ambiguous. It might have been clear, which is what we had previously held, but we might have gotten it wrong. Which do you think this is? I don't think we'll ever know. I know that the dissent below thought it was a Scrivener's error, and it very well might be. This statute is a complicated statute with multiple interlocking parts, and even the defendants have said it lacks clarity in how those parts interact. Has any other—I mean, we've talked about these other cases that talk about the statute as a whole, and those are certainly informative about confusion in the courts, but has any other court looked at this language, 1595A, and found it anything but plain, found it to be a Scrivener's error, found it to be ambiguous? Well, at least four circuits have found that it's the opposite of what Rafa 1 found, and the Congress didn't act after any of those decisions, right? So after Justice Souter found that 1594 modifies 1595A, the Congress didn't act, and after the Tenth Circuit ruled in Biskline and Sherman v. Teen Solutions and found that, as we had argued, that you can get a civil remedy by proceeding under the 1589B prong separately from 1595, the Congress didn't act. And then after Pajo v. Rodriguez, where the D.C. Circuit found that 1589B is a criminal violation as a perpetrator that you then get entitled to a civil remedy under 1595, Congress didn't act. But when this court ruled in Rafa 1 that 1595 does not extend to people who attempt or conspire to benefit, Congress acted within seven months. I wanted to ask, this question wasn't what was before the Supreme Court. There's a lot made of the fact that Congress acted immediately after the denial of cert there. What are we supposed to take of that? That question wasn't going to change. Which maybe the Supreme Court would revisit the entire case, but this question wasn't before the court in that dispute. This question had been settled by the prior opinion. That's correct, but the district court found that we were diligent and that we had taken every avenue necessary to show that we were diligent. Oh, sure, but with respect to the timing, I'm sorry, on the second Lansgraf factor, with respect to the timing there, the fact that Congress acted immediately. Well, they didn't act immediately after our opinion. They acted shortly after the denial of cert on a different question presented. So I actually looked up the dates of every clarifying case that was cited to you and the dates that Congress acted, and this case is the shortest time period but one. Almost in all of the other cases, it's a year, two years, or five years. Okay, from Rafa 1 to... From the date of an appellate decision to the date that Congress acts. So in terms of the case law on what is timely and what is short, this case is well within the very shortest range that courts... How is the timing though probative of the retroactivity question? I mean, it's definitely probative of the idea that Congress didn't like Rafa 1, but that's a different question than whether the statute should apply retroactively. Well, courts that have given context to the clarification doctrine have found that the timing is one of the things that indicates that an amendment is clarifying as opposed to a change because it responds to a recent enactment and the language is that it follows fast upon a dispute. What's your position? Does the Langdorf exception have to survive for you to survive in this case, or can you make it under the Langdorf traditional presumption? We believe that we can make it under the Langdorf traditional presumption. We believe Congress made a clear statement by picking the language, clarifying and technical, that courts have for decades said indicates that Congress meant for the amendment to apply retroactively. It's such a high bar, and as my colleague has pointed out, it really has to be clear. I don't find a lot of history there. There's just not much. The timing is interesting. The language of the title is interesting. Let me ask you this. By my count, the D.C. Circuit, the 1st, 3rd, 4th, 5th, 7th, 9th, 10th and 11th, by whatever name, still retain the Langdorf exception. What role, if any, should that play in our analysis, whether or not we officially recognize that that exception still applies? I think the weight of authority is that it does apply, that it is part of the conversation between the Congress and the courts. It's an important corrective mechanism where Congress can take a look at statutes and correct Scribner's errors, mistakes or misreadings. From your perspective, it doesn't matter. We can go either way. The Langdorf is there. You still win from your perspective. Correct. What do we make of the language in Section 1595 that allows civil action against the perpetrator, parentheses, or whoever knowingly benefits? And that was the language before AFTRA. So now, or whoever knowingly benefits or attempts or conspires to benefit. So is that or significant? In other words, are perpetrators and those who knowingly benefit two different categories, or are they the same? I think this shows why the statute is somewhat ambiguous and unclear. But what is clear is that Congress acted to ensure that attempt or conspiracy liability or, I'm sorry, attempt or conspiracy is included in the civil remedy and that liability extends over those. But just the way that you read it, it is unclear. It's a little bit ambiguous. It says or. It doesn't say defined as or including those. It says or, which pretty strongly suggests these are two different ways that you could get at imposing this liability. But I think the lesson from the entire structure of the statute is that Congress was extending the beneficiary clause. Congress understood that trafficking and forced labor are what the driver is, economic benefit, and they were trying to cut that off. And it was in 1589B the entire time. So it's not like negative numbers. The fact that there's a redundancy doesn't mean it cancels out. So I have another question for you. You said that Rother 1 found it was undisputed that Rubicon had knowledge after the whistleblower report in February 2012. But it doesn't actually say that. It talks about whales. If you recall, there were four different descendants. And whales is the one who their CEO or whoever president testified they had the whistleblower report. Rother didn't do that. I don't think the Rubicon section even discusses knowledge because Rother 1 didn't reach it. I thought it did, and if you will bear with me, I'll come back at my rebuttal time and give you this. I'm pretty sure it did. Counsel, if I can take you back to 60B. Sorry, I just found it. It's right here. I have the Westlaw version. It's at 1177. It's under the A, and it says, and February 20, 2012, parentheses, the day before Rubicon was undisturbedly aware of Rother's whistleblower report. The pin site is 1171? Yeah, I can bring you my copy. So to show retroactivity, at least under the second prong part of the piece is to say, well, it's a clarifying amendment, whether it's an exception or an application of that. It's merely clarifying what was already there. But for purposes of 60B, you have to establish that it's a clear and authoritative change in the law. Is there any tension between those two standards to say that, well, something was there all along, even if we might not have appreciated it, but now we get to reopen because there's been a clear and authoritative change in the law, even though it's been there all along? I think APCO answers that question directly. APCO says that it is a change in the circuit where that decision was, right? So it is a change, but it is also clarifying because Congress is clarifying that that circuit reached the wrong decision or there was a Scrivener's error that was misinterpreted. So APCO answers that question squarely, I think. Do you want to reserve the balance of your time? I do. Thank you, Your Honor. Thank you. Thank you. I'm Barbara Taylor on behalf of the defendant appellee Rubicon Resources, LLC. I'd like to address some of the points that were raised during the appellant's argument. Regarding whether 1589B has any relevance to the case, it does not. That is the criminal provision that has a prong, subsection B, regarding knowingly benefiting from participating in a venture which the person knew or in reckless disregard or recklessly disregarded if engaged in a conduct that would violate the statute. The plaintiff never pled against Rubicon a 1589B violation. I have from the record ER 21... ...82 to 2186, the actual counts that were pled, and there were two counts. There was a count one against the perpetrators, Patana, alleged perpetrators, NSS Frozen Food Company, and a count two against the alleged beneficiaries, which is Rubicon and Wales. Ms. Taylor, doesn't that create even a greater disjunction You're saying that the criminal offense has a lower mens rea than the civil offense, and that's one of the things that seems to be worrying that might suggest that Congress has made a mistake here. Well, for benefiting, there is a different mens rea for benefiting in the criminal provisions. In both sex trafficking, there's kind of almost a catch-all provision, I think, 1593A on benefiting, and then 1589B, which is the forced labor benefiting, and they all are either new or in reckless disregard, whereas in the civil remedy provision, which Judge Beatty was pointing out, perpetrators versus the beneficiaries, I would view that as two separate causes of action under the civil remedy provision. You have a cause of action against alleged perpetrators, which could be coextensive with all of the criminal substantive predicates from attempt to the beneficiary in 1589B to actual committing the forced labor, and then you have, or the person who knowingly benefited from participation in the venture, the person knew or should have known, engaged in a violation, and I would call that a separate cause of action under a different class of persons, not perpetrators, and under that one, it is knew or should have known, which is a different scienter, and you can't read 1589B into that knew or should have known cause of action to try to get around, in our case, the fleeting issue is one thing, and in fact, on summary judgment, it was argued to Judge Walter that Rubicon knew or should have known. It was never raised that Rubicon recklessly disregarded, which further shows it was only the knew or should have known cause of action that was being pled against Rubicon, but I'd also like to point out just something on the Rule 60B standard, and we submitted a 28J letter recently on the Blomb Bank Saul case that Justice Thomas just issued the opinion on June 5th, and we did that just to show that he's reiterating what the standard is and how high it is on a 60B6, but there's also some other issues that are pertinent. Plaintiffs, in their response to our letter, said that, well, putting aside they said that Blomb Bank Saul is not relevant, which I believe it is, they said that this court can review prior, quote, prior legally erroneous rulings, and they cited a Ninth Circuit case from 1993, a unique case versus Cabral, 985F2nd1031 at page 1034, where that case stated a Rule 60B motion may be granted where the party seeking relief demonstrates the court made a mistake. Now, Cabral didn't specifically say what prong of 60B it was addressing, but it was obvious from the context and the case law it cited in support, it's talking about Rule 60B1, which concerns mistakes, that kind of thing, and it's cited because, number one, 60B1 has a one-year time limit to bring your motion. 60B6 doesn't have that time limit, and within days of dismissal, the plaintiff and Cabral moved under Rule 60B. The court didn't talk about the standard for relief under Rule 60B6, and the two cases Cabral cites, Liberty Mutual Insurance Company versus EEOC, 691F2nd438 at 441, we hold, quote, we hold the district court did have power under Rule 60B1 to reconsider its award of costs, the Ninth Circuit 1982 case, and then Gila River Ranch Incorporated versus United States, 368F2nd354 at page 357, it's Ninth Circuit 1966, quote, this is the kind of mistake that can be corrected by the district court pursuant to Rule 60B1 of the federal rules, and, you know, obviously, you can't address mistakes under Rule 60B1. There was some controversy, and I think circuits split about whether that reached judges' mistakes or just a party's mistakes, and it reached judges' mistakes under the Ninth Circuit precedent, but also in Kemp versus U.S., 596U.S.528 at 539, a 2022 case, again, by Justice Thomas, the Supreme Court held that B1 applies to mistakes of law by district courts and that a Rule 60B motion made more than one year after judgment is based on a mistake by the district court is untimely. So, to that extent, this idea that you can use a 60B6 motion, if you have an issue that arose since the judgment, such as the amendment to the Trafficking Act, but also use it just to bootstrap into completely re-reviewing the underlying judgment, I don't think that's allowed, and, in fact, in Blonde and Saul, Justice Thomas said 60B6 is a catch-all, quote, is a catch-all, that follows Progress 1 through 5, and, quote, provides only grounds for relief not already covered by the preceding five paragraphs, quote, close quote, and, quote, were it otherwise, the catch-all provision could swallow 1 through 5 and be used to circumvent their time bars. So, I just want to make sure that the panel, and I'm sure you are, but just make sure you're aware that this idea that you can use a Rule 60B6 to address erroneous rulings in the underlying judgment, doesn't have any, I guess, any real basis in this case law. And, in fact, one of our amicuses, the International Franchise Association, at page 12, footnote 4, cited SEC versus Berkeley Healthcare Dynamics LLC, a 2022 Ninth Circuit case, 2022 Westlaw site 4207 at page 2, saying, quote, dissatisfaction with a factual finding, close quote, in an earlier, quote, summary judgment order is not a basis for relief from judgment under Rule 60B6. So, I just want to make that clear that we've got the right standard here. And, again, on what coextensive the Roe versus Howard case, I think Judge Bader, you're correct, that that case does not say anything about benefiting or attempting to benefit it concerned extraterritorial jurisdiction, and, again, if you read it to be a civil remedy provision with two separate causes of action, one against perpetrators, which opens the entire panoply of criminal predicates, and one against a different class of persons held to a different level of standard, beneficiaries, you cannot read anything regarding any of the prior case laws conflicting with this court's decision in RONTA 1. Reach over assistance was clean, obviously wasn't dealing with attempts merely to benefit. In fact, Justice Souter said there was harboring the victim and receipt of a benefit. It was the actual crime of sex trafficking that was attempted. And that plays into the two different causes of action point. I'm going to ask you what I asked your friend across the aisle. I asked, what's your best case in support of your argument that ATRA is a substantive change in the law as opposed to a clarifying amendment? Which case would you point us to? Well, I would point to RONTA 1 as a case of first impression, that this is the law as it was before ATRA was enacted. Any other case? I would say that if you look at, I think, the Belshi case, which is also a case regarding retroactivity analysis, and what's enough. If you want to go down the clarifying legislation route, if you don't accept the Washington Legal Foundation's amicus to rethink that, and we're in the clarifying legislation world, there's a couple of points to make with that. Whether it's clarifying at all, and even if it is, does it reach a final judgment, a case that's already gone through the entire court system and it's finally adjudicated? I would say that there's a case, it was a Supreme Court case that was cited in the ROTHA 2 opinion, Rivers v. Roadway Express, that made a point about the title. The title might sensibly be read as meaning to correct from now on, and when you look at that, with our title, it's clarifying and technical, and there's one more word, update. And Judge Ikuda in ROTHA 2 made quite a point about update would seem to be more forward-looking than backward-looking. But again, to go back to what my best case is on the retroactivity point and the clarifying point, there has to be more than just a title. And I think in all of the cases that we have, and I've cited them in our briefs, docket entry 30, our answering brief at pages 18 to 21, that title is not enough. As noted in the Belshey case, page 1266, note 6, apart from the word clarifying in the title, which Belshey said the word clarifying or the title is not part of the law, it was noted in Belshey. There's no... Counsel, to that point, over here. Sorry. To that point, in 2003, Congress used different language as well. 2003, they said it was an enhancement, right? In 2008, they also used the same language, that it was an enhancement. And here, they called it clarifying. So don't we look at both of those things? You can look at the title. It's not part of the law. But what I would say is it's not enough. And I would cite you to Beaver versus Tarsier hotels, 816 F3rd 1170, at page 1188, ninth circuit 2016. I'll quote. Neither... But counsel, wait a minute. I guess maybe I'm not being clear. They specifically talked about this being something new, right? This is an enhancement to a right. Here, they're talking about it being clarifying and an update. So it's not an additional thing. Why is that sufficient? It is additional because prior to the insertion of the words that were missing in the statute before, attempts were not actionable under the beneficiary clause. Congress used those specific words before. Right. And they used something different in the 2023 version. I have no idea why Congress used the words it used because there's absolutely no legislative history on this point. And in other cases, like Belshi or Abco Music, there were house reports, statements in the congressional record, even words in the actual statute itself, not just a title. Does this sort of get into the issue? Maybe Judge Johnstone, Judge Graber, were asking similar questions about, well, what exactly is the standard? Because we have case law that says, you know, you don't actually do a land graph analysis if it's a clarifying amendment. And if that's true, then all we're truly debating is, is this clarifying or not? If land graph applies and you have to have some kind of, it has to be clear, then all of a sudden, this debate about what is clarifying and what does update mean maybe becomes less relevant if it's just not clear. Well, I think if you could look at, you could look at land graphs and you could look at what's retroactive and the prong of retroactivity that would apply here would be, does it increase liability? And adding attempt to that beneficiary clause, cause of action, does increase liability. But I guess if you view it as, no, we're just clarifying what was there all along, I suppose you could say it doesn't increase liability. But I don't think there's enough meat on the bones of what Congress did here with ATRA to say that really is clarifying and that it really is clarifying what the pre-enactment provision was meant to say. In Beaver versus Tarsier hotels, this court actually said, quote, Congress's decision to legislatively overrule earlier interpretations of a statute does not necessarily imply that these earlier interpretations were inconsistent with congressional intent at the time or even wrongly decided. That goes more to, was ROTA one wrongly decided? But also none of the case law on clarifying legislation relied solely on the title of the enactment, which is not part of the law itself. And you could review that title, it's like in the Rivers versus Roadway Express case, you've reviewed it from now on, technical and clarifying update. But in Beaver, it seems like that we held that an enactment's label to amend and clarify did not necessarily mean the enactment should apply retroactively, where in that case, there was no disagreement as to the statute's meaning before Congress amended it. I mean, arguably here, it seems like there may be disagreement when you look at Riccio and Rowe and Ratha. So I think that's distinguishable, isn't it? Your Honor, I would have to disagree with that because I think that those prior cases did not address the specific issue ROTA one did. ROTA one was actually a case of first impression, but whether attempt to... Whether a person who knew or should have... A person who knew any benefits from participation in a venture the person knew or should have known engaged in a violation. None of those other cases, any of them address that cause of action in the civil remedy provision. At most, Riccio's addressing perpetrators. Rowe doesn't address... Well, that's if you agree that that's separate, right? I mean, because I thought Riccio... Again, it's just the court there found that the defendant's hotel owners, I think the Patels, could be liable under the TVPRA for attempting to benefit from the TVPRA violations. And the Fourth Circuit's decision in Rowe held that the TVPRA's criminal liability provisions which provide liability for attempts to benefit from TVPRA violations were coextensive with the TVPRA's civil liability provisions. So it just seems like that creates... And I'm asking you, doesn't that create sufficient ambiguity and judicial disagreement? I don't think it does, number one, on the First Circuit's decision. And again, you've got to think back. This is a criminal statute that happens to have a civil remedy provision. Attempt is in a specific section of the TVPRA, 1594A, but it is for the purpose of specifying you have the same punishment. You can get the same imprisonment and the same fine as a completed offense. And in the criminal world, you don't even have to separately plead in an indictment attempt. It's just understood that you can prosecute someone for attempt. Civil, it's just an unknown kind of cause of action, an attempt. That's just not commonly seen at all. And in Riccio, the First Circuit stated, the defendants at the least attempted to violate Section 1589 without specifying what subsection, 1590, 1591, forced labor, harboring for forced labor, and sex trafficking. Quote, the necessary substantial steps including the harboring of Riccio, the victim, and the receipt of benefit. So the attempt was an attempt to force services from the victim, not an attempt to benefit from the perpetrator, the sex trafficker's violation. That's how I would read that. You could read it differently, but that's how I would read it. I do think Riccio is not entirely clear in a model of clarity and is susceptible to multiple readings. But I think certainly one reading is that it recognized that the people there, again, the Patels, could be liable for attempting to benefit from McLean's TVPRA violations, which to me, I guess, seems contrary to the conclusion reached in RATHA 1 that Rubicon could not be liable for its attempt to benefit from the company's TVPRA violations. Well, what I would say is if the plaintiffs had pled it differently, they may have a much better argument at keeping the case alive as to Rubicon. If they had pled a Section 1589B violation and tried to prove, knowing in reckless disregard, that the venturer had engaged in a violation, then you might be able to craft an argument that the attempt could be read against Rubicon as a perpetrator. Did they allege that Rubicon or Wales, I guess Wales isn't relevant anymore, but that they were perpetrators, that they had either committed any of these offenses under the statute or that they attempted to commit the offenses? No. And I have the sections of the complaint here. Again, a separate count against Patana and S.S. Frozen, which were the actual companies that employed the labor. And that starts out with a plaintiff or victim of peonage, forced labor, involuntary servitude, human trafficking, and they cite the statutory sections. And then you have count two against Rubicon and Wales. They again start out plaintiffs or victims because that is an element. You still have to be a victim. But then they go on. Defendants Rubicon and Wales knowingly benefited from participation in a venture which defendants knew or should have known was engaged in peonage, forced labor, involuntary servitude, unlawful conduct with respect to documents and human trafficking. They received financial benefit as well as the benefit of a steady stream of imported shrimp and seafood for market from their participation in the venture. And, you know, once it was obvious from, I mean, they could have, if the temp was always cognizable under that beneficiary prong, they could have pled it. But once it was obvious from discovery that Rubicon had never sold any of the shrimp, they could have asked to amend the complaint, which they didn't do. Your pleading argument has some resonance to me with the additional fact, and that was that this case was over. Yeah. And then Congress comes along, and even if you take the position of you're a friend, it's resurrecting a closed case and allowing them to, in effect, re-plead what they didn't plead before. Is that the way you look at it? I can kind of, yeah. And it does resonate. And, in fact, it resonates a little bit with Long Bank Fall because there they wanted to combine, the second circuit was trying to combine the Rule 60B-6 and the 15-A for lease to amend your pleadings. And they said, that's a more relaxed standard. Let's put them together and we'll give you your chance. And it's like, it's almost what's going on here. They may want to re-plead if they got this case reopened or as they asked Judge Walter in the district court, they wanted him to revisit summary judgment so he could take advantage of new case law. Could Congress say case was a year old and Congress passed a clarifying amendment, could that be resurrected and allow the parties to re-plead? I think it's going to depend on whether there's a final judgment and has the case reopened. How much time there is? All the way through the courts, everything's done. Everything's done. Supreme Court's done. I don't think you can, I don't think the clarifying amendment can be viewed as a mandate or a de facto mandate to reopen the case, which is almost what plaintiffs are doing here. It's not like Platt v. Spencer at Farms where the statute actually said dismissed cases will be reopened. This is more of an argument the plaintiffs are making that, well, we're going to use 60 v. 6 and if you don't reopen it, you've abused your discretion. On that note, what do you make of the fact that the district court relied on the other two grounds that the court had offered when granting summary judgment? What is the import of that for our review? To me, it shows from his perspective there's no abusive discretion. Regardless of how you decide the retroactivity issue, you could completely bypass it and not address that issue. He had independent grounds that were not disturbed. The fact that this court didn't reach those grounds doesn't change the district court's perspective. It's in his discretion to say, I'm going to rely on those grounds. Maybe he could say, I want to give him a second look. You still have the problem of retroactivity and final judgment. To reverse the district court on this, do we need to then reach these other two grounds? No, I would say if you reverse the district court... In order to... There's a lot of argument about retroactivity. Let's say, hypothetically, you lose on that. But the district court gave some other reasons which were not previously addressed in RASA 1 or in the now vacated RASA 2. But for this court to dispose of this appeal, do we now need to reach these other grounds in order to conclude that the district court abuses discretion? I don't think you can reach those grounds on a 60B-6. You're not to review the underlying judgment. Well, we're not reviewing that, but we're reviewing the district court's decision. The district court in the decision cited the prior decision. I think he's entitled to... Well, he cited his prior decision. He didn't cite RASA 1. Correct. He went back to his summary judgment. But we're reviewing the 60B decision. So if the argument is that decision should be reversed, do we now need to reach all three of those grounds? Well, all you have to do on the other two grounds is look at the... Did he have... Did he exercise his discretion properly to rely on the grounds in his summary judgment ruling that were not reached by the Ninth Circuit in the prior appeal? That's all you have to do. Ms. Taylor, you have to... Now, so once he incorporates his earlier ruling on summary judgment, why isn't that part of what we can and should review in reaching a decision? There's no case law saying you can do that? Is there a case law saying that we can't? Because it's a very unusual thing to say I'm going back and reiterating what I said earlier on summary judgment. And my other question, you're getting short of time, but my other question is because the... It sort of folds into the retroactivity question in the following way. Because attempt... Because the summary judgment could not and did not deal with attempt. It really didn't answer the question of whether there's evidence that could support an attempt because that wasn't considered. Well, he did... Judge Walter did point out that's a novel theory. He didn't extensively address it, but he did address it as a novel theory. And I don't know that... I mean, assuming... He addressed it in the summary judgment is what you're saying? Yeah, he did. Well, I mean, it seems like appellate courts can, in our discretion, review or decide the merits of a Rule 60B motion in the first instance on appeal. That's the Phelps v. Alameda. I'm trying to figure out why we wouldn't be able to do that if we got to that point. Under the 60B6 standard, though, which is abuse of discretion, you have to look at this from the district court's perspective. This is not like a de novo. Or an error that he erred. Or you could... It's not a situation where one court might have made an exercise... But he committed legal error. We'd have to look at it to see whether he committed legal error. But you don't even... But that's not why you're here. You're not here to find out if he made a legal error on the summary judgment. You're here to find out did he abuse his discretion in how he addressed the 60B6. And if he used the wrong standard on the 60B6, if he did what the Second Circuit did, right, combining two different standards, saying, okay, we're going to grant... We think you should have granted the motion. That would be a legal error of the kind that you could address here. But it wasn't... Well, let's say the facts were contrary to what he said. That's an error. Well, the plaintiff could have brought a 60B1. But that has to be done within one year. And in Fulham Bank's law, just as Thomas cautioned, you can't use 60B6 to get around that time bar. If they had thought that he made a legal error on other grounds, they could have tried... Yes, it is a situation. I don't think in a year they would have known what this court would have decided to rule on and wrought the one. But if they thought there was a legal error made on the summary judgment ruling, they had a year. And again, it's discretionary, so I understand they weren't guaranteed that he would relook at that. But they could. They could have pointed out to him new case law that might have caused him to rethink what he did, but they didn't do that. Another thing is that the plaintiff certainly, if they thought attempt was always recognizable under the Beneficiary Clause, they could have brought a petition for cert on that point. If there really was a conflict in the circuits, that's the perfect grounds to go to the Supreme Court. And they did on the other two defendants, Batana and F.S. Frozen, on the extraterritorial jurisdiction point. They asked for more time. They got an extension and then they filed their petition. But they didn't. They stat on this. That's another small point why I don't think the law previously extended to the attempt. This is new, but it would apply to potentially pending cases if it was clarifying, but not to a case that already had a final judgment and gone all the way up through the court system. And I take it under line graph you feel they have no chance. Yeah, I feel they have no chance. There's no express statement that is meant to be retroactive. I mean, there's, there's, there's, you know, line graph has a second step, though. If there's no express retroactivity, congressional intent can be shown clearly by other factors. What if we had legislative history, for example, that showed that these plaintiffs had gone to Congress and lobbied immediately after cert was denied and said, clarify this. And Congress did so. It has to be more than just clarify because I think Rivers vs. Rodeway Express as I cited before, by 511 U.S. 298, were argued with line graph and cited in the majority opinion in Ratha 2. Just because Congress is clarifying something doesn't necessarily mean it's meant to be retroactive. You could clarify for all future, you know, for future cases, this is what the law means for pending cases. This is what the law means. Okay. But it doesn't necessarily mean you're going to go back retrospectively and capture cases that are closed and no longer pending. The timing may or may not be a clear statement of Congress, but isn't it a little suspicious? I'm sure they were unhappy with the result. But that doesn't necessarily mean. I mean, going forward, everyone gets the benefit of the new law with the attempts being recognizable. But going back, it has to be, I think, much, much clearer. I mean, we cited plenty of cases where there's specific statements about whether it's to reach prior case law, pending case, prior cases, pending cases, that kind of thing. There's nothing, there's nothing at all in here but the title and that it happened after. That would be a step two of Landgraf out of Landgraf, right? Because Landgraf specifically contemplates situations in which Congress will not explicitly state that a new amendment or law is retroactive. Again, I think you would look to House and Senate reports, statements in the Congressional Records, statements in the law itself. You could look, are there actual conflicts on this specific point? Not other readings of other parts of the statute and statements made that you might want to extrapolate to this particular provision, but are there actual conflicts? And again, it's very dangerous to look at a Congress 15 years later and have it decide what a Congress 15 years before meant in a statute that didn't have any statement whatsoever regarding whether attempts were recognizable under the Beneficiary Provision. Now we have what Justice Scalia used to say that history is bunk, basically. We don't know what Congress means or what it intends, right? Well, it's the judiciary's role to decide what the law means. And Congress can say you got it wrong, but it can't change the results that you have already finally taken. There's no way to determine what Congress intended. Does that mean anything here? There's no way. Well, if they're explicit. Senator? Staff member? A report? You can look, and even in the law itself, I think in Landgraf itself, there is a statement regarding a prior provision of the Civil Rights Statute that was amended where Congress actually said regarding, and it wasn't passed, so it wasn't ever passed, and it may not have been constitutional, but where Congress actually said regarding final judgments, they shall be vacated under Rule 60b-6 if justice so requires and are you considering due process of law. Okay, so that's what Congress intended there. That's a pretty broad statement in the law itself. Now, that may not have passed muster under Plowton v. Spencer forms just like a year later. Thank you. Councilor? Did you have one more question? Yeah, it's one thing that concerns me throughout the arguments is the conflation between Congress's intent to clarify or whether an amendment is clarifying and whether Congress intends an amendment to be retroactive. And my point is an amendment could be a change, right, but if Congress intends it to be retroactive, it doesn't matter whether it was clarifying or not. Is that correct? Under Landgraf. Landgraf had nothing to do with whether a new law was clarifying or not. It said Congress can intend a new law to be retroactive and it can do so explicitly or it can do so impliedly. Correct? Well, Landgraf... Is that correct? Right, whether it's clarifying or not. I don't know about impliedly, what that means, but... If it's not explicit, we go to step two and we look at a whole bunch of other steps to determine whether its intent is clear despite the lack of an explicit statement that it's going to be... Although Landgraf, he carved out three types of statutes that wouldn't be retroactive, just meaning it increases liability, it diminishes your rights, whatever. It was a prospective... So Congress could, if it wanted to, make completely new liability retroactive. There would be constitutional limitations to that, but it can. But Landgraf said nothing about clarifying. It didn't carve out that before. So the two issues are related, but not necessarily determinative of the other. Does that make sense? Right. Because if Congress is not clarifying at all, but just making a whole new law, it can still make it  It can still have very serious consequences for litigants, yes. Correct. So in some sense, even if we were, in theory, to agree with you that the Asher Amendment was not clarifying, we would still have to address the question of whether Congress intended it to be retroactive. Is that right? Even if it wasn't clarifying, it's changing the law, and you have to look for either an express statement by Congress that it was meant to reach pre-enactment conduct, or if you don't see that, and it does increase in our case liability, if there's no express statement, you have to... Is there a clear indication of what congressional account was? Thank you. Thank you. Okay. Thank you. Hi. If I might, I'd like to first address the pleading issue because we did plead 1589B. We pled it in count two in paragraphs 95, 96, and 97 of our complaint, where we expressly pled that the defendants knew that the workers at the factories were victims of deceptive recruitment, passport confiscation, and coercive recruitment. So you're saying you pled attempt? We pled all the elements of attempt, which are that you intend to commit to conduct, and you take a substantial step towards it, and we pled those, and it's 95, 96, and 97. For example, in 96, we said that knowing that the shrimp and seafood was produced with forced labor, the U.S. defendants provided a market and worked to expand that market, and they did so knowing the conduct would continue and benefiting from it and intending to benefit from it, which are the elements of attempt liability in this circuit. We also pled in 97 that the U.S. defendants willingly accepted the risk in order to benefit and profit from the common venture, which is reckless. But if I could just, I'm sorry, just one more thing on the pleading. We also briefed 1589B in every filing that we made with the court, including in the original motion to dismiss briefing. We allege that 1589B requires partitionicipation in a venture knowing or in reckless disregard, and that we had the facts for reckless disregard, and that we also did that in the summary judgment briefing and the appeal briefing. And I'm sorry, there was such a lot of discussion over, I didn't mean to cut you off. I apologize. There was such a lot of discussion over the pleading. We're really running out of time, so I have a completely different question for you. Of course. Even if we completely agreed with you, decided it's retroactive, all of these things, Plaintiff Rothfuss himself has no claim, right? Because he didn't work for Fathana. He worked for F.S. Frozen. Correct. Plaintiff Rothfuss, either way, his claim is concluded. His claim is not. And then, I know this is a weird thing to ask you, but I just scoured through page 1171 and didn't find the language you're talking about. I'll give you my copy. Can I borrow your copy for a moment, and if I see where it is, I can give it back to you. Thank you. Thank you. Counsel, if you prevail on the retroactivity point, we remand, assuming we don't reach the... Well, I guess I'll first ask, are you asking us to reach and resolve the 60B alternative grounds? Are you asking us to address the error in the summary judgment? That would obviously be the best for us, yes. Okay, okay. It's just that we don't have a ton of briefing on that particular point, and we're looking at Danova Review of Summary Judgment. Now, assume we have a split verdict where you win on the retroactivity, but we remand for a 60B. What should happen then? I guess it would be up to the district court to revisit those two issues. I mean, I think for the participation in a venture, there isn't that much work to do, and that's a clear error of law. No court in the entire United States has used this definition We propose the dictionary definition, which is the definition that the courts are settling on. I think that is a reasonable choice. That's the definition that Judge Ralph of the D.C. Circuit adopted that seems to be a common-sense place to look for the definition of participation in a venture. His definition is idiosyncratic. No one has followed it. Does that have anything to do with the ATRA, or is this just a completely different, separate argument? I think that is what... So that's one of the summary judgments. What else do you ask the district court to do? He found that there was... that we had insufficient evidence of knowledge, but he failed to bifurcate the knowledge analysis and didn't look at the time period during the attempt. Those are the two summary judgments. What do you ask the district... What does the district judge do with respect to the retroactivity decision? Does the district judge then re-weigh whether our holding with respect to retroactivity was a clear and authoritative change? Is the district court compelled to do  that?  compelled at that point if we find that retroactive to reopen to allow you to litigate your attempt claims? I think if you find that it's retroactive, then district court would be bound by that decision, and maybe I'm just misunderstanding your question. But there was still the issue of participating knowingly. I mean, there's still other elements. Well, so in other words, if it's retroactive, if we find that it's retroactive, it is always, and therefore, it's required that the district court reopen. It would always be an abuse of discretion and legal error for a district court not to reopen when confronted with a retroactive statute that has been enacted after a case is closed. So no, right? I mean, it just happens in this case, he rested on legal errors. If he had ruled in, you know, if he said we weren't diligent or there was reliance, I mean, there are other ways he could have, but it's a balancing test with, you know, flexible factors. If everything else is met, the district court is required to reopen if we find retroactivity. Well, he actually already found that the other factors of the Phelps test weighed in our favor. I don't think this runs afoul of Ploutt because he has the, you know, Ploutt says that's why the Congress can't say, like, you have to reopen this specific case. But as it happens under the facts of this case because he rested on legal errors, I think, and that he found that other Ploutt factors weighed in our favor. And so then, yeah, then what's left is to reopen. So if the matter, if you win on the retroactivity and it goes back to the district court, would the district court be permitted to say, well, I also relied on my other two grounds from the summary judgment order, and so I deny 60B release? I think it would depend on what your order said. Yes, I mean, I think if you found it was retroactive, and that the other two grounds were error, which is what we're asking the panel to do, then he would be bound by that order. Are you asking that? What? You are asking us to do that? I thought you didn't have an answer for that. No, no, that is what we're asking. You were asked several times about these other two points. Oh, I'm sorry. You're saying that we should decide whether the district court erred on the other two grounds? That's correct, Your Honor. Oh, okay. And then, either we would decide or send it back to the district court if we found that they were legal error based on the clerks.  All right, thank you so much. Thank you both. Ms. Frisman? Frishman. Thank you very much. And Ms. Taylor, we appreciate the oral argument presentations here today. The case of Keohokalole v. Rubicon Resources LLC is now submitted. We are adjourned. Thank you. All rise.
judges: MURGUIA, GRABER, GOULD, CALLAHAN, SMITH, BADE, BRESS, SUNG, MENDOZA, JOHNSTONE, ALBA